IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NONA JACKSON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-24-184 |
| | § | |
| TRANSUNION, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This case arises out of the purchase and financing of a BMW vehicle by the plaintiff, Nona Jackson. (Docket Entry No. 29). Ms. Jackson entered into a retail installment contract with BMW Financial Services to purchase the vehicle, took possession, and ultimately stopped making the installment payments under the contract. The vehicle was repossessed. Ms. Jackson, representing herself, alleges that BMW Financial Services violated federal and state law by failing to update her credit report to reflect a payment on the vehicle, illegally repossessing her vehicle, and defrauded her. BMW Financial Services counterclaims, asserting that Ms. Jackson did not pay the amount due under the contract for the vehicle, and so is liable for breach of contract and owes the costs of repossession and the losses incurred by selling the car at below what was due under the contract.

The record establishes, and the parties do not dispute, the following facts: Ms. Jackson entered into a Motor Vehicle Retail Installment Contract with Momentum BMW to purchase a used BMW with a vehicle identification number ending in 9518. Momentum assigned the contract to BMW Bank of North America, a wholly owned subsidiary of BMW Financial Services. Momentum in turn assigned the contract to BMW Financial Services, which assigned the contract

an account number ending in 9803. The contract required Ms. Jackson to make 72 monthly payments of $496.29 beginning on January 16, 2021, and continuing each month. The contract stated that any failure to make a timely payment would constitute a default by Ms. Jackson, allowing BMW Financial Services to exercise remedies that included sale and repossession.

Additional facts are disputed. BMW Financial Services asserts that while Ms. Jackson made the monthly payments between January 14, 2021, to April 28, 2023, she made no further payments. (Docket Entry No. 84 at 8). BMW Financial Services asserts that Ms. Jackson sent a fraudulent check for one payment and then failed to make additional payments. (*Id*. at 8-9). BMW Financial Services repossessed the vehicle and sold it at auction at a loss. (*Id*. at 11-13). BMW Financial Services also reported the status of the account to certain credit reporting agencies. (*Id*. at 13-14). According to BMW Financial Services, after the default and repossession, Ms. Jackson submitted at least seven disputes about the account to consumer reporting agencies, asserting either that the account was the product of identity theft or that she had paid it off in full. (*Id*.). BMW Financial Services investigated each of the disputes and responded by confirming that the account in fact did belong to Ms. Jackson and remained in arrears. (*Id*.).

Ms. Jackson's complaint is almost entirely devoid of any factual allegations. It primarily consists of various statutory sections that have been copied and pasted. (Docket Entry No. 29). Her response to the motion for summary judgment appears to allege that she made all timely payments, and that BMW Financial Services illegally repossessed her car. (Docket Entry No. 3-4). Ms. Jackson also claims that BMW Financial Services failed to provide her proper notice before the repossession. (*Id*. at 4). Finally, Ms. Jackson claims that BW Financial Services "harmed her creditworthiness" by "fail[ing] to properly address [her] credit disputes." (Docket Entry No. 90).

BMW Financial Services moves for summary judgment on Ms. Jackson's claims under the Fair Credit Reporting Act, 5 U.S.C. § 1681 *et seq.*, and Texas Finance Code § 348.110 and § 348.111, arguing that Ms. Jackson has presented no competent summary judgment evidence that BMW Financial Services improperly, much less fraudulently, repossessed her car or filed incorrect, much less illegal, credit reports. (Docket Entry No. 84 at 7). BMW Financial Services also moves for summary judgment on its counterclaim against Ms. Jackson, asserting that the undisputed facts show that Ms. Jackson failed to make the required payments and that, as a matter of law, she is contractually liable for the losses. (*Id.*).

BMW Financial Services has presented an extensive summary judgment record that includes: the motor vehicle retail installment contract executed by Ms. Jackson; a payment delinquency statement; correspondence between Ms. Jackson and BMW Financial Services; and notices from consumer reporting agencies about the disputes Ms. Jackson submitted. (Docket Entry No. 84-1). Ms. Jackson's summary judgment evidence primarily consists of documents that she claims establishes that one of BMW Financial Services's lawyers, Brandon Stein, engaged in unauthorized practice of the law because he signed filings before being admitted to this district pro hac vice; a nearly incomprehensible affidavit that recites the allegations contained in her complaint; and annotated copies of the evidence submitted by BMW Financial Services. (Docket Entry No. 91-1).

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)). "A fact is material if it 'might affect the outcome of the suit.'" *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019), *as revised* (Jan. 25, 2019) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). When considering a motion for summary judgment, the court "must consider all facts and evidence in the light most favorable to the nonmoving party" and "must draw all reasonable inferences in favor of the nonmoving party." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and pointing to record evidence demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* FED. R. CIV. P. 56(c). "When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial.'" *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration adopted) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"Once the moving party has initially shown that there is an absence of evidence to support the non-moving party's cause, the non-movant must come forward with specific facts showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quotation marks and quoting reference omitted). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021) (quotation marks and quoting reference omitted). Rather, the nonmovant "must identify specific evidence in the record and articulate the precise manner in which that evidence supports [its] claim." *Shah v. VHS San*

4

*Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (alteration adopted) (quotation marks and quoting reference omitted).

The movant is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. But "[i]f 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson*, 477 U.S. at 250–51).

BMW Financial Services asserts, and the court agrees, that Ms. Jackson has provided no documents or competent evidence that creates a genuine factual dispute material to any of Ms. Jackson's claims. Ms. Jackson's affidavit adds only self-serving documents with no record support, and her affidavit contradicts the materials in the record. "[I]t is well established that [a] party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary." *Berthelot v. Am. Postal Workers Union, Local 185*, 2011 U.S. Dist. LEXIS 99349, at *10 (S.D. Tex. Sept. 11, 2022) (citing *In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000)).

Ms. Jackson claims under the Fair Credit Reporting Act that BMW Financial Services provided erroneous information to a credit reporting agency. But the record contains no evidence that BMW Financial Services reported inaccurate information about Ms. Jackson's account to consumer reporting agencies or that any violations of 15 U.S.C. § 1681s-2(b) occurred. Instead, the record shows that BMW Financial Services reported that the account identified as Ms. Jackson's was in fact her account and that it was delinquent. (*See* Docket Entry No. 84-1 at 92-140). Both facts are abundantly supported by record evidence. (*See, e.g.*, Docket Entry No. 84-1 at 18-19, 21-23).

Ms. Jackson also asserts claims under Texas Finance Code § 348.110 and § 348.111, which provide that a retail seller must deliver a copy of the retail installment contract to the buyer, or the buyer may rescind the contract and receive a refund of payments made under that contract. But the record clearly establishes that Ms. Jackson received a copy of the retail installment contract when she signed it on December 2, 2020. (See Docket Entry No. 84-1 at 10). The written contract is in the record, and Ms. Jackson admitted that she received the contract. There is no basis for these claims. (*See* Docket Entry No. 29 ¶¶ 28-31).

Finally, BMW Financial Services asserts that there is no genuine dispute as to its counterclaim that Ms. Jackson owes the adjusted deficiency value of $9,597.01. The record establishes that Ms. Jackson failed to pay the contractual monthly installment amounts after April 28, 2023, (*id.* at 18-19), and that BMW Financial Services repeatedly notified Ms. Jackson that she was in default. (*Id.* at 25-59, 61). The vehicle was sold at auction for $11,800.00; the contract balance as of the recovery date was $22,142.08. The retail installment contract that Ms. Jackson signed clearly provides that in the event of default, Ms. Jackson was obligated to pay any deficiency resulting from the sale of the vehicle. (Docket Entry No. 84-1 at 10). The record also establishes that that BMW Financial Services clearly informed Ms. Jackson it could not accept the fraudulent payoff check, (*id*. 65-67), and that Ms. Jackson did not subsequently make any payment on the amounts due, (*id*. at 69). The record clearly shows that after BMW Financial Services accelerated the debt, it provided Ms. Jackson notice and an opportunity to redeem the vehicle by paying $20,690.11. (*Id*. at 71-73). Because Ms. Jackson once again attempted to pay this amount using an invalid check, the vehicle was not redeemed and was sold. (*Id*. at 75). The record further shows that after the car was repossessed and sold, BMW Financial Services provided Ms. Jackson with an itemized statement of the deficiencies and demanded payment of $9,597.01 within 20 days.

(*Id*. at 89-90). Finally, the record reflects that Ms. Jackson attempted to pay BMW Financial Services the $9,597.01, but the payment did not clear the bank. (*Id*. at 25). There is no evidence in the record establishing that Ms. Jackson paid the delinquent amount.

Ms. Jackson has pointed to no record evidence that defeats BMW Financial Services's counterclaim. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (internal citations and quotations omitted). The court finds that there is no genuine factual dispute material to determining that BMW Financial Services is entitled to recover on its counterclaim to recover the deficiency remaining after Ms. Jackson's default and the vehicle sale. Under the retail installment contract that Ms. Jackson signed, and the facts shown in the record, Ms. Jackson must pay BMW Financial Services the adjusted amount of $9,597.01. (Docket Entry No. 84-1 at 89-90).

BMW Financial Services also seeks the attorneys' fees that it incurred in defending against Ms. Jackson's claims. The retail installment contract Ms. Jackson signed provides that if BMW Financial Services retains counsel who is not a salaried employee to enforce the contract, Ms. Jackson "will pay any reasonable attorney's fees and court costs as the law allows." (Docket Entry No. 84-1 at 14; Docket Entry No. 84 at 25). Because Ms. Jackson is pro se, the court declines to assess an award of attorneys' fees against Ms. Jackson. The motion for attorney's fees is denied.

Finally, BMW Financial Services moves to strike Ms. Jackson's surreply to the motion for summary judgment. (Docket Entry Nos. 95, 97). Ms. Jackson did not seek leave, and the court did not grant, leave to file a surreply. But even considering the surreply, Ms. Jackson's claims would still be dismissed with prejudice and BMW Financial Services's summary judgment motion would still be granted. The motion to strike is moot. (Docket Entry No. 97).

The court grants BMW Financial Services's motion for summary judgment dismissing Ms. Jackson's claims with prejudice and grants BMW Financial Services's counterclaim. BMW Financial Services must submit a proposed final judgment no later than April 30, 2025.

SIGNED on April 14, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge